

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-60081-CR-ROSENBAUM/VALLE

18 U.S.C. § 371

UNITED STATES OF AMERICA

v.

IRENE SHANNON,
    f/k/a IRENE STAY,

        Defendant.
_____/

## INFORMATION

The United States Attorney charges that, at all times relevant to this Information:

### GENERAL ALLEGATIONS

1. Rothstein, Rosenfeldt and Adler, P.A. (hereinafter "RRA") was a law firm with offices located at 401 East Las Olas Boulevard, Fort Lauderdale, Florida in the Southern District of Florida and elsewhere. The law firm employed approximately seventy (70) attorneys and 150 staff members and engaged in the practice of law involving a wide range of specialties, including labor, employment, corporate, commercial and personal injury law. Scott Rothstein (hereinafter referred to as "Rothstein") was the Chief Executive Officer (CEO) and Chairman of RRA.

2. TD Bank, N.A., (hereinafter referred to as "TD Bank") was a large commercial bank with branch offices in 13 states, including a branch office in Weston, Florida. The executive offices of TD Bank were located in Portland, Maine and Cherry Hill, New Jersey.

3. Rothstein and RRA maintained approximately 38 bank accounts at TD Bank, which included operating accounts, payroll accounts, trust accounts for real estate transactions

1

and other RRA-related business, and trust accounts associated with a fraudulent investment scheme.

4. Gibraltar Private Bank and Trust (hereinafter referred to as "Gibraltar Bank") was a commercial bank with seven branch offices, including a branch office in Fort Lauderdale, Florida. Rothstein and RRA maintained at least four bank accounts at Gibraltar Bank.

5. RRA also maintained bank accounts at the Fort Lauderdale, Florida branch of Colonial Bank, N.A. (now known as Colonial Branch Banking and Trust Company) and Sterling Bank (now known as Iberiabank). The deposits of TD Bank, Gibraltar Bank, Colonial Bank, and Sterling Bank were all insured by the Federal Deposit Insurance Corporation.

6. IRENE SHANNON, f/k/a IRENE STAY, (hereinafter referred to as "SHANNON") was a bookkeeper who became the chief financial officer of RRA. As the chief financial officer, SHANNON oversaw the accounting functions of RRA, including the deposits and withdrawals made by RRA and Rothstein at TD Bank and the other financial institutions.

7. A co-conspirator maintained an account at a branch of Equitable Bank (now known as First United Bank) in Fort Lauderdale, Florida. The deposits of Equitable Bank were insured by the Federal Deposit Insurance Corporation.

8. A co-conspirator maintained an account at a branch in Fort Lauderdale, Florida of the aforementioned Colonial Bank, N.A. (hereinafter referred to as "Colonial Bank").

Fraudulent Investment Scheme

9. Beginning in or about 2005, Rothstein and other co-conspirators began operating a fraudulent investment scheme.

10. Potential investors in the fraudulent investment scheme were falsely informed that RRA and firms affiliated with RRA represented potential plaintiffs (hereinafter referred to as

2

"plaintiffs") in sexual harassment, discrimination and/or whistle-blower suits and that settlements of these claims had been negotiated with the purported defendants prior to filing law suits.

11. Potential investors were falsely informed that, pursuant to the aforesaid settlement agreements, the terms thereof were to remain confidential.

12. Potential investors were falsely informed that the plaintiffs would accept discounted lump-sum payments, that the investors would fund the lump-sum payments to the plaintiffs, and that, in exchange, potential investors would receive the installment payments due and owing to the plaintiffs from the defendants under the terms of the negotiated settlement agreements.

13. Potential investors were falsely informed by Rothstein and other co-conspirators that pools of confidential settlement agreements were available for purchase in amounts ranging from hundreds of thousands of dollars to millions of dollars.

14. Potential investors were falsely informed that the amounts due to the plaintiffs pursuant to the settlement agreements were paid into trust accounts at TD Bank which were controlled by Rothstein and RRA, and that said funds would only be utilized to pay the potential investors.

15. From in or about 2007 and continuing through in or about October 2009, investors transferred over a billion dollars to RRA trust accounts at TD Bank and other financial institutions through wire transfers that were transmitted in interstate commerce and by other means.

16. In fact, there were no plaintiffs and no confidential settlement agreements. Instead, Rothstein, with the assistance of defendant SHANNON, would further the fraudulent scheme by transferring hundreds of millions of dollars obtained from investors to: (a) pay prior investors in the scheme; (b) supplement and support the operation and activities of RRA;

(c) distribute lavish gifts, including exotic automobiles, jewelry, boats, loans, cash and bonuses, to individuals and members of RRA in order to engender goodwill and loyalty and to create the appearance of a successful law firm; (d) make large charitable contributions to public and private charitable institutions, including hospitals and other legitimate charitable and nonprofit organizations, in order to deflect any negative scrutiny by the public and/or law enforcement agencies and to create the public impression of altruism and commitment to the community; and (e) create the appearance of affluence and wealth, by purchasing expensive real and personal property, in order to convince potential investors of the legitimacy of RRA and of the purported investment opportunities.

17. A representative of one of the investment groups would periodically send, by electronic mail, to Rothstein and defendant SHANNON a schedule of the funds that should be on deposit in each trust account at TD Bank maintained by Rothstein and RRA for their investment group. The schedule provided by the representative of the investment group reflected that the trust accounts should have had hundreds of millions of dollars on deposit.

18. As the chief financial officer of RRA, responsible for overseeing the trust accounts, defendant SHANNON was well aware that hundreds of millions of dollars were not being held in trust accounts for investors, and that the funds were instead being disbursed, generally in amounts in excess of $10,000, to further Rothstein's fraudulent scheme.

## COUNT 1

1. The General Allegations of this Information are realleged and expressly incorporated herein as if set forth in full.

2. From in or about early 2005 through in or about November 2009, in Broward County, in the Southern District of Florida and elsewhere, the defendant

4

IRENE SHANNON,
f/k/a IRENE STAY,

knowingly and willfully combined, conspired, confederated, and agreed with co-conspirator Rothstein and with other persons known and unknown to the United States Attorney:

(a) to knowingly engage in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, all in violation of Title 18, United States Code, Section 1957; and

(b) to knowingly execute and attempt to execute a scheme and artifice to defraud a financial institution, in violation of Title 18, United States Code, Section 1344.

## OBJECT OF THE CONSPIRACY

3. The object of the conspiracy was to generate money for Rothstein, defendant SHANNON and their co-conspirators by: 1) obtaining investors' money for their own use and benefit and the benefit of others through the operation of a fraudulent investment scheme, and then transferring the criminally derived proceeds to and from the trust accounts at TD Bank in amounts in excess of $10,000 in order to continue the operation of the fraudulent investment scheme; and 2) issuing checks drawn on accounts containing insufficient funds in order to unlawfully utilize the "float" period, in furtherance of a scheme commonly known as "check kiting."

## OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

In furtherance of the conspiracy and to achieve the object thereof, at least one of the co-conspirators committed or caused to be committed, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

A.   Money Laundering

4.   As part of her duties as chief financial officer, defendant SHANNON regularly printed out the account balances for all the trust and operating accounts of RRA and discussed with Rothstein the account transfers that needed to be made in order to pay the creditors of RRA and to pay certain of the investors in the fraudulent investment scheme.

5.   SHANNON, at the direction of Rothstein, on multiple occasions unlawfully transferred investor funds in amounts in excess of $10,000 from the trust accounts at TD Bank to other trust accounts at TD Bank in order to pay other investors.

6.   SHANNON, at the direction of Rothstein, on multiple occasions unlawfully transferred investor funds in amounts in excess of $10,000 to the operating accounts of RRA in order to pay the operating expenses of RRA, to purchase houses, luxury automobiles or other luxury items for Rothstein, and to cover overdrafts at Gibraltar Bank.

7.   SHANNON, at the direction of Rothstein, on multiple occasions unlawfully transferred funds held in trust for clients of RRA in amounts in excess of $10,000 to pay the operating expenses of RRA and to replenish the investor funds depleted from the investor trust accounts at TD Bank.

B.   Check Kiting Scheme

8.   In or about February 2006, while RRA was experiencing financial difficulties and required a source of funds to maintain the law firm's operations, Rothstein requested that a

co-conspirator utilize his account at Equitable Bank in order to issue a check payable to one of the RRA accounts.

9. In or about May 2007, Rothstein requested that a second co-conspirator utilize his account at Colonial Bank in order to issue a check payable to one of the RRA accounts.

10. Rothstein requested that defendant SHANNON, simultaneously with the transactions referenced in overt acts 8 and 9, issue checks payable to the co-conspirators in approximately the same amount of, or in an amount slightly higher than, the checks issued from the accounts of the coconspirators.

11. Having simultaneously issued and deposited checks between the accounts of the co-conspirators at Equitable Bank and Colonial Bank and the RRA accounts, Rothstein, defendant SHANNON, and their co-conspirators unlawfully obtained beneficial financing for RRA from the financial institutions during the "float" period, which was the period of time that it took for the checks issued from Equitable Bank and Colonial Bank and RRA to clear.

12. Rothstein, on occasion, told co-conspirators to hold the check which they received from RRA (as described in overt act 10) for a day or two and not to deposit it immediately in order to allow sufficient time for the checks issued from the accounts at Equitable Bank and Colonial Bank to post to the RRA accounts.

13. From in or about February 2006 through February 2008, defendant SHANNON issued checks from RRA accounts, in amounts ranging from $37,500 to $330,000, totaling in excess of $10,000,000, which checks were deposited by co-conspirators into bank accounts at Equitable Bank and Colonial Bank.

14. From in or about February 2006 through February 2008, defendant SHANNON deposited, into the accounts of RRA, checks issued from co-conspirators drawn on Equitable Bank and Colonial Bank in amounts ranging from $4,000 to $400,000, totaling in excess of $10,000,000.

All in violation of Title 18, United States Code, Section 371.

*[signature]*
WIFREDO A. FERRER
UNITED STATES ATTORNEY

*[signature]*
JEFFREY N. KAPLAN
ASSISTANT UNITED STATES ATTORNEY

*[signature]*
PAUL F. SCHWARTZ
ASSISTANT UNITED STATES ATTORNEY

*[signature]*
LAWRENCE D. LaVECCHIO
ASSISTANT UNITED STATES ATTORNEY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

CASE NO. _____

vs.

IRENE STAY,

**CERTIFICATE OF TRIAL ATTORNEY\***

**Defendants.**
_____/

**Superseding Case Information:**

**Court Division**: (Select One)

Miami ___   Key West ___
FTL  √    WPB ___   FTP ___

New Defendant(s)  ___ Yes  ___ No
Number of New Defendants  ___
Total number of counts  ___

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:     (Yes or No)
   List language and/or dialect

4. This case will take __0__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:
   (Check only one)                              (Check only one)

   I    0 to  5 days    √
   II   6 to 10 days    ___           Petty    ___
   III  11 to 20 days   ___           Minor    ___
   IV   21 to 60 days   ___           Misdem.  ___
   V    61 days and over ___          Felony   √

6. Has this case been previously filed in this District Court?   **NO**  (Yes or No)
   If yes:
   Judge: _____   Case No. _____
          (Attach copy of dispositive order)
   Has a complaint been filed in this matter?   ___ (Yes or No)
   If yes:
   Magistrate Case No.
   Related Miscellaneous numbers:
   Defendant(s) in federal custody as of
   Defendant(s) in state custody as of
   Rule 20 from the District of

   Is this a potential death penalty case?   **NO**  (Yes or No)

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?  ___ Yes  √ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?  ___ Yes  √ No

[signature]
Jeffrey Kaplan
ASSISTANT UNITED STATES ATTORNEY
Court ID No. A5500030

Penalty Sheet(s) attached

REV 4/8/08

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** **IRENE STAY**

**Case No:**

**Count #: 1**

Conspiracy to Commit an Offense Against the United States, that is, Money Laundering and Bank Fraud

18 U.S.C. § 371

**\* Max. Penalty:** 5 years' imprisonment, Greater of $250,000 or twice the gross gain or twice the gross loss, 3 years' supervised release

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. |
| IRENE STAY | ) | |
| | ) | |
| Defendant | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
Defendant's signature

_____
Signature of defendant's attorney

_____
Printed name of defendant's attorney

_____
Judge's signature

_____
Judge's printed name and title